Maria McArdell, Appellant, *v.* R. H. Casey, Inc., Respondent, Impleaded with Edward DeWitt and Others, Defendants.

First Department, April 7, 1922.

**Negligence — action for injuries resulting from catching foot in sidewalk — erroneous nonsuit — evidence justifying finding defendant guilty of negligence.**

In an action to recover damages for personal injuries resulting from the plaintiff's foot being caught in a sidewalk which was in course of reconstruction, it was error to dismiss the complaint at the close of plaintiff's case, where there was evidence that the owner of the property, where the sidewalk was being reconstructed, had let a contract to defendant for certain work including the reconstruction of the sidewalk, which contract provided that said defendant should be solely responsible for any damage " sustained by any and all person or persons or property during or subsequent to the progress and completion of the work " and that it would " take all precaution against accidents by day or night both in the streets and on the sidewalk as required by law; " that said defendant's foreman and his men were working on the sidewalk day after day down to the time of the accident; that the plaintiff caught her foot in an opening four or five feet long, three or four inches wide and from one and one-half to two and one-half inches deep between a portion of newly-laid sidewalk and some planking which had been laid where the old walk had been removed; and that, at the time, it was very dark with no light or barricade to warn a pedestrian of the condition of the walk.

Under the evidence the jury would have been justified in finding this defendant guilty of negligence.

Appeal by the plaintiff, Maria McArdell, from a judgment of the Supreme Court in favor of the defendant R. H. Casey, Inc., entered in the office of the clerk of the county of New York on the 14th day of October, 1921, upon the dismissal of the complaint as to said defendant by direction of the court at the close of the plaintiff's case, and also from an order entered in said clerk's office on the 11th day of October, 1921, directing the severance of plaintiff's action against said defendant from her action against the other defendants, and directing the entry of the said judgment.

*John M. Gibbons* [*H. F. Ives* of counsel], for the appellant.

*Frederick Mellor*, for the respondent.

Laughlin, J.:

The action was brought to recover for personal injuries sustained by the plaintiff from a fall on the sidewalk on the northerly side of Forty-third street about seventy-five feet easterly of Broadway at about nine-thirty P. M. on the 31st of July, 1918. Plaintiff testified that she was proceeding westerly on the sidewalk and that while passing the Hotel Wallach at the northeasterly corner of Broadway and Forty-third street her foot " stuck " in a hole and she fell upon the sidewalk and sustained injuries, the nature and

extent of which it is unnecessary to specify since she was nonsuited. The evidence on her part further showed that the trustee of the estate of Ogden Goelet, one of the defendants before the severance, the owner of the hotel property, on the 6th of June, 1918, let a contract to the respondent for certain work including the reconstruction of the sidewalk; that at the time of the accident the new sidewalk had been completed from Broadway easterly to the hotel entrance or to the easterly line thereof and a strip of new sidewalk of the width of about eight feet had been laid along the curb easterly from that point to the easterly line of the lot and that the old walk had been removed between it and the building line and cinders and ashes filled in and that some planks had been placed over this space lengthwise of the sidewalk, leaving an opening four or five feet in length and three or four inches in width and from one and one-half to two and one-half inches in depth between the edge of the newly laid walk and the nearest plank; that this was one of the lightless nights, so called, and was quite dark and that there was no light or barricade to warn a pedestrian of the condition of the sidewalk, and that the plaintiff without knowing or observing its condition stepped into this opening and fell, in consequence of her foot being so caught therein that it was held until released by the policeman on the beat, who was in the vicinity.

By the terms of the respondent's contract with the hotel company it agreed to be solely responsible for any injury or damage "sustained by any and all person or persons or property during or subsequent to the progress and completion of the work" and that it would "take all precaution against accidents by day or night both in the streets and on the sidewalk as required by law." Counsel for the respondent contends that the evidence adduced by the plaintiff shows that it had sublet its contract work with respect to the sidewalk and that, therefore, the negligence, if any, was that of its subcontractor. The record, however, does not sustain this contention. The president of the respondent, called to the stand by the plaintiff, testified that respondent only did masonry and carpentering work but did no concrete work and that it sublets concrete work to others; that it contracted to make the space under the sidewalk waterproof but did not do waterproofing itself and that the Tuttle Roofing Company did the waterproofing but that he was not present and did not know whether his company broke up the sidewalk to enable the Tuttle Company to waterproof it and he could not say whether respondent's contract with that company was in writing or oral; that his company had as superintendent on the job one Bloore to supervise all the different parts of the work, by which, he later on testified, he meant to see that work was done in accordance with

its contract with the owner, and that thereafter his company received a bill from Pietrowski & Konop — other defendants before severance — " for work on a cement walk after the completion of the job " and a bill from the Tuttle Roofing Company " for the same work." Those bills were received in evidence but were not marked and are not in the record. Bloore was also called by plaintiff, but owing to his evasiveness no natural fact was elicited on his direct examination. He admitted that he was in charge of the work that his company was doing at the corner of Forty-third street and Broadway, but testified that he was not in charge of or superintending " paving " on the northerly side of Forty-third street. On cross-examination, he testified that his company did not rip up the sidewalk and repair it with waterproofing so that other people could lay cement and that he did not know who did and did not see that work while it was being done; that some work was done on the sidewalk a couple of weeks after the accident but his company did not prepare the walk for that work and he did not know who did and did not know what contracts his company had and he refused to name his boss until commanded so to do by the court; that he guessed the cement on the outer part of the walk was laid about three days before the accident and could not say whether any part of the remaining walk was made ready for cement and the cement put in two days after the accident; that before the accident the sidewalk was completed from Broadway east to the entrance to the hotel and from the hotel entrance to the end of the building line, the outer one-half was completed and that the old sidewalk was still on the inner half; that the nature of the work he was doing there was general overhauling, making a new entrance into the cellar, doing away with the hotel entrance, making a new sidewalk lift, and that this work was completed about a month or so before the accident, but the pavement, by which he evidently meant the sidewalk, had not been put down; that he understood that plaintiff fell within four or five feet of the cellar entrance.

One Taylor, the manager of the hotel at the time of the accident, called to the witness stand by plaintiff, testified in answer to a question as to who he saw doing the work on the sidewalk that he saw respondent's foreman Bloore and his men working in and about the sidewalk day after day down to the time of the accident, and saw and heard the foreman giving orders to the men; that his attention was drawn to the accident about ten minutes after it happened and he examined the sidewalk and found an opening therein and described it as hereinbefore stated. He also testified, in substance, that this walk was very extensively used and that the cinders under the opening in the walk had been softened by rain and packed

down by the constant walking on them; that the opening was five or six feet easterly from the hotel entrance, and it was a very dark night and the light was bad, and that there was no light outside of the hotel entrance and that the light from the inside did not shine on the opening; that he procured a board and placed it in the hole to make it level with the sidewalk. A police officer testified that he was at the police box on this sidewalk about twenty-five feet east of Broadway with his back towards Sixth avenue and he heard a scream and turned around and saw a dark object lying on the sidewalk and ran to the point and found the plaintiff lying on the walk and her foot caught in a hole in the walk and he pulled it out and called for a chair and assisted her into it; that the hole in which her foot was caught was one or two feet west of the entrance of the hotel and five or six feet from the curb and about four inches wide and two and one-half inches deep and five or six feet long and between the planks and the concrete; that it was one of the lightless nights and "very dim."

On this evidence the jury would have been warranted in finding plaintiff was free from contributory negligence and that the respondent was doing the work which resulted in this condition of the sidewalk and was responsible therefor and was guilty of negligence in leaving this opening longitudinally of the sidewalk of such width that the foot of a pedestrian was liable to be caught therein; and, therefore, the case should have been submitted to the jury.

The judgment is reversed and a new trial ordered, with costs to appellant to abide the event, and if it shall be made to appear on the settlement of the order that the issues between the plaintiff and the other defendants originally joined with respondent remain untried, the order of severance will also be reversed, but otherwise it will be affirmed, without costs.

Dowling, Smith, Merrell and Greenbaum, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, and if on the settlement of the order it shall appear that the issues between the plaintiff and the other defendants originally joined with respondent remain untried, the order of severance will also be reversed, but otherwise it will be affirmed, without costs. Settle order on notice.